*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 19, 2019

Plaintiff-Appellee,

v

No. 341504
Manistee Circuit Court
LC No. 17-004727-FH

SAMUEL DARNEL HARPER,

Defendant-Appellant.

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Following defendant's jury trial conviction for cocaine possession, the trial court departed upward from the recommended minimum sentencing guidelines range and sentenced defendant to four to eight years' imprisonment. This 14-month departure was proportionate under the circumstances and we affirm.

## I. BACKGROUND

Defendant was arrested as he walked down the street on suspicion that he had stolen liquor from a grocery store. Defendant advised the arresting officers that he was carrying a crack cocaine pipe in his pocket and they confiscated it. Later testing revealed trace amounts of cocaine on the pipe.

The prosecutor charged defendant with possession of less than 25 grams of cocaine. Defendant was released on bond pending trial, but appeared for the final status conference carrying "drug paraphernalia." Against his attorney's advice, defendant addressed the court and stated, "[T]he reason I do what I want to do here in this county is because just four days ago I just sold cocaine to [a former court employee] and I'm telling you in this courtroom that I did it." Defendant further informed the court that he was "not afraid to go to the penitentiary. I've been there nine times."

The jury convicted defendant as charged. Before sentencing, the Department of Corrections calculated defendant's minimum sentencing guidelines range. Defendant's Offense Variable (OV) score of 0 placed in OV Level I and his Prior Record Variable (PRV) score of 105

placed in him PRV Level F, the highest level possible. Defendant's minimum sentencing guidelines range was set at 2 to 17 months. As defendant had previously been convicted of cocaine-related crimes, the court doubled the minimum guidelines range to 4 to 34 months pursuant to MCL 333.7413.

At sentencing, defendant acknowledged his long history of drug abuse. He requested a term of incarceration followed by parole, convinced that he would not be able to stay clean while on probation. The court remembered defendant's pretrial confession to yet another drug crime and recited defendant's lengthy adult criminal history dating back to 1985. The PSIR listed eight prior felony and 22 prior misdemeanor convictions. These included drug and theft offenses, indecent exposure, lying to police, and domestic violence. The court agreed with defendant, "I don't think that you would be successful on probation. . . . You, on several occasions, have had probation revoked and been sentenced to prison." The court also cited defendant's "long-term extensive history of substance abuse issues" with intermittent periods of sobriety.

The court sentenced defendant to four to eight years' imprisonment, stating:

Having considered the testimony I heard at trial, the jury's verdict, your prior record, the [PRV] score of 105, the eight prior felony convictions, I'm simply of a mind that the guidelines, even doubled, are a good starting point, but they don't do justice to your extensive adult criminal record and your refusal to abide by the laws of this state. . . .

\* \* \*

The Court certainly is tasked with explaining why it believes the sentence imposed is proportionate to the crime committed: Recognizing that this was a residue-only case, I understand that the appellate courts may be asked to address the proportionality of this sentence.

When I impose this sentence, really what I'm guided by is his extensive prior felony record and the multiple prior convictions for drug-related offenses, some of which include either delivery of cocaine or possession with intent to deliver cocaine, his statements here in court at the final status conference, and, really, a history that presents as a man 54-years of age, that he has no interest in stopping this type of behavior; so, that's the reason for the sentence.

Defendant now appeals his sentence.

II. ANALYSIS

We review departure sentences for reasonableness, *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), and review a lower court's determination that a particular sentence is reasonable for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). In determining whether a trial court abused its discretion by unreasonably departing from the sentencing guidelines, we consider whether the court conformed to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse II*, 500 Mich at 476-477. In this regard, we must consider whether

-2-

the trial court acted within its discretion by imposing a sentence that is proportionate to the seriousness of the particular offense and the character of the particular offender. *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017), oral argument gtd on the application 501 Mich 1066 (2018). Trial courts may depart "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Milbourn*, 435 Mich at 657.

The statutory guidelines are "a useful tool" in selecting a proportionate sentence as they "embody the principle of proportionality." *Dixon-Bey*, 321 Mich App at 524. But a departure sentence may be "more proportionate" based on certain factors, such as "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines, but given inadequate weight." *Id.* at 525 (citations omitted). Factors not otherwise considered by the guidelines might include "the defendant's misconduct while in custody, the defendant's expression of remorse, and the defendant's potential for rehabilitation." *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part and rev'd in part on other grounds 500 Mich 453 (2017) (citations omitted). Based on these various factors, the court must support not only its decision to depart, but also the extent of the departure. *Milbourn*, 435 Mich at 660.

In *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008), the Supreme Court described a practical application of the principle of proportionality. "[A] court may explain[] the similarity between the facts justifying the departure and the facts describing a crime meriting the same sentence under the guidelines. A comparison of a defendant's characteristics and those of a hypothetical defendant whose recommended sentence is comparable to the departure sentence is a valuable exercise." *Id*. at 310. In this vein, a "potential means of offering . . . a justification [for a departure] is to place the specific facts of a defendant's crimes in the sentencing grid." *Id*. at 306. The Court reasoned that "reference to the grid can be helpful, because it provides objective factual guideposts that can assist sentencing courts to ensure that the offenders with similar offense and offender characteristics receive substantially similar sentences," *id*. at 309 (quotation marks and citation omitted), and thus "minimize idiosyncrasies" in sentencing. *Id*. at 311. However, courts are not required to "sentence defendants with mathematical certainty" and "precise words [are not] necessary . . . to justify a particular departure." *Id*.

The trial court in this case aptly determined that defendant's extensive criminal history was not adequately considered in scoring the guidelines. Defendant's PRV score of 105 points was well above the 75 points necessary to place him in the highest PRV Level for his Class G offense. Defendant was assessed 50 points for PRV 1, reflecting his two prior high severity felony convictions, see MCL 777.51(1)(b), and was given the highest points allowable under PRV 2—30—reflecting four or more prior low severity felonies, see MCL 77.52(1)(a). Defendant's two other low severity felony convictions could not increase his point total further, although a score of 50 points would seem otherwise justifiable. Defendant was also assessed the highest score possible for PRV 5, prior misdemeanor convictions. MCL 777.55(1)(a) provides for an assessment of 20 points for 7 or more prior misdemeanors. Defendant had 22 prior misdemeanor convictions, more than three times the number that could be counted under this variable. A score of 60 points for PRV 5, therefore, would have been more suited to the circumstances. Ultimately, if the trial court could have assessed points for the remainder of defendant's prior convictions, defendant's total PRV score could have been more than double the

75-point minimum required for placement in the highest PRV Level. This strongly supports that the extent of defendant's prior criminal history was not adequately reflected in the scoring of his sentencing guidelines.

The trial court also considered defendant's behavior pending trial for the current cocaine-possession offense. Defendant admitted in open court that he had recently committed an even more serious offense by selling cocaine. Defendant's failure to control his conduct while awaiting trial was closely related to the court's consideration of defendant's chances for rehabilitation. The court noted that defendant was 54 years old, had a long history of substance abuse with only briefs respites of sobriety, admitted that probation would provide insufficient supervision to curb his substance abuse, and demonstrated an unwillingness to be rehabilitated.

In the end, the trial court's 14-month upward departure was carefully selected to fit this particular offender and this particular offense, being defendant's ninth felony conviction overall. Although the sentencing offense of possessing drug paraphernalia with only trace amounts of cocaine seems rather trivial standing alone, we cannot conclude that the trial court abused its discretion by departing in this case.

We affirm.


/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher